# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CADLEROCK III, LLC, ) <br> an Ohio limited liability company, ) <br>  ) <br> Plaintiff/Appellee, ) <br>  ) <br> v. ) <br>  ) <br> DUSTIN WHEELER, ) <br>  ) <br> Defendant/Appellant. ) | Case No. CIV-22-1069-G <br><br> Adv. Pro. No. 22-1007-SAH <br> Bankruptcy No. 21-12791-SAH |

## OPINION AND ORDER

Defendant/Appellant Dustin Wheeler ("Wheeler") appeals the denial of discharge by the United States Bankruptcy Court for the Western District of Oklahoma. Wheeler has filed a brief in support of his appeal (Doc. No. 11). Plaintiff/Appellee Cadlerock III, LLC ("Cadlerock") has responded in opposition (Doc. No. 13). Wheeler has replied in further support of his arguments on appeal (Doc. No. 14).

The issue presented is whether the Bankruptcy Court erred in finding that certain real property transfers by Wheeler were fraudulent transfers made with the actual intent to hinder, delay, or defraud his creditors. Exercising jurisdiction under 28 U.S.C. § 158(b), the Court affirms.

### LEGAL STANDARD

When a bankruptcy court's decision is appealed to a federal district court, the district court reviews the bankruptcy court's factual findings for clear error and its legal conclusions de novo. *See In re Herd*, 840 F.2d 757, 759 (10th Cir. 1988). A factual finding is clearly erroneous if "it is without factual support in the record, or if the appellate court,

after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." *LeMaire ex rel. LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir. 1987). On a de novo review, "the court makes an independent determination," with "no presumption of the correctness or validity of" the prior conclusion. *De Novo*, *Black's Law Dictionary* (12th ed. 2024).

### BACKGROUND

This bankruptcy appeal traces to a large judgment entered against Wheeler after protracted litigation and efforts Wheeler allegedly undertook to protect his assets from collection on that judgment. Wheeler is the owner and operator of Wheeler Chevrolet, an automobile dealership. *See* Appeal R. (Doc. No. 4-2) at 120.[1] Wheeler was a guarantor of his ex-wife's business's debts when The Bank of Union, an Oklahoma bank, failed. *See Cadlerock III, LLC v. Wheeler*, No. CIV-16-1071-F, 2018 WL 8867712, at *1 (W.D. Okla. Sept. 10, 2018). The Federal Deposit Insurance Corporation was appointed receiver and sold the ex-wife's defaulted loans to Cadlerock. *Id.* Cadlerock, in turn, sued Wheeler to collect on the guarantee. *Id.*

On September 7, 2018, judgment was entered in favor of Wheeler and against Cadlerock. *See Cadlerock III, LLC v. Wheeler*, No. CIV-16-1071-F (W.D. Okla. Sept. 7, 2018) (j.).[2] On June 18, 2019, the Tenth Circuit reversed and remanded with the direction

---

[1] The facts recounted herein from the Appeal Record are not disputed except where noted.

[2] The Court may take judicial notice of proceedings and orders that have a direct relation to the matter at hand. *See In re Mitchell*, No. CO-11-086, 2012 WL 5995443, at *11 n.93 (B.A.P. 10th Cir. Dec. 3, 2012).

that judgment be entered for Cadlerock. *See Cadlerock III, LLC v. Wheeler*, 779 F. App'x 519, 528 (10th Cir. 2019). On September 3, 2019, judgment was entered against Wheeler and in favor of Cadlerock in the amount of $5,066,150.17 plus interest (the "Judgment"). *See Cadlerock III, LLC v. Wheeler*, No. CIV-16-1071-F (W.D. Okla. Sept. 3, 2019) (j.).

Wheeler did not report the Judgment on personal financial statements he prepared for lenders but, instead, represented in such statements that he had an increasing net worth from 2019 through 2021. *See* Appeal R. at 205. On October 21, 2021, Wheeler filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the Western District of Oklahoma (the "Petition"). *See* Appeal R. at 15; Vol. Pet., *In re Wheeler*, No. 21-12791-SAH (Bankr. W.D. Okla. Oct. 21, 2021). Wheeler disclosed $102,392.94 in total assets and $20,018,384.06 in total liabilities. Summ. of Assets and Liabs. at 1, Ex. 1, *In re Wheeler*, No. 21-12791-SAH (Bankr. W.D. Okla. Nov. 5, 2021).

I.  Oklahoma Wealth Preservation Trust Act

Long before filing of the Judgment and the Petition, Wheeler employed a relatively modern estate planning tool known as the wealth preservation trust ("WPT"). *See* Appeal R. at 202. *See generally* Adam J. Hirsch, Symposium, *Fear Not the Asset Protection Trust*, 27 Cardozo L. Rev. 2685, 2685-86 (2006) (describing the growing availability of such trusts under state law). Also known as asset-protection trusts, WPTs are generally designed to shield assets from potential creditors of the trust settlor. *See Trust*, *Black's Law Dictionary* (12th ed. 2024). Oklahoma joined the growing number of states authorizing such trusts in 2004 with the passage of the Oklahoma Family Wealth Preservation Trust Act (the "WPT Act"). *See* Okla. Stat. tit. 31, §§ 10 et seq.; Hirsch, *supra*, at 2687.

3

"Uniquely among the states, [the WPT Act] allows asset protection trusts to be made revocable, in whole or in part, and explicitly bars creditors from using judicial process to force settlors to exercise the retained right of revocation," subject to the strictures of the Uniform Fraudulent Transfer Act ("UFTA"). Hirsch, *supra*, at 2687; *see* Okla. Stat. tit. 31, §§ 13, 17; *id.* tit. 24, §§ 112 et seq.[3]

As originally enacted, Oklahoma's WPT Act capped contributions to WPTs at one million dollars (the "Contribution Limit"). *See* WPT Act, ch. 509, 2004 Okla. Sess. Laws § 3 ("[N]o judgment . . . can be a lien on the trust for the payment of debts for the payment of debts of a grantor up to One Million Dollars ($1,000,000.00) in value."). The Oklahoma Legislature subsequently changed and then eliminated this limit. In 2005, the WPT Act was amended to permit replenishment contributions. *See* WPT Act, ch. 438, 2005 Okla. Sess. Laws § 3. (excluding from the Contribution Limit "[t]he fair market value of any property received by the grantor as a result of a partial revocation") (the "Replenishment Amendment").[4] In 2014, the WPT Act was amended to remove the Contribution Limit altogether (the "2014 Amendment"). *See* WPT Act, ch. 102, 2014 Okla. Sess. Laws § 2

---

[3] Although not relevant here, the Act exempts child support payments from its bar on involuntary alienation. *See* Okla. Stat. tit. 31, § 12.

[4] In full, the relevant section of the Replenishment Amendment provides: "The fair market value of any property received by the grantor as a result of a partial revocation shall increase the amount of property which the grantor may contribute to the preservation trust pursuant to Section 12 of this title." WPT Act, ch. 438, 2005 Okla. Sess. Laws § 3. The effect of the Replenishment Amendment was to allow make-up contributions ("replenishment contributions") following partial revocations that would not count against the Contribution Limit. *See* Appeal R. at 163.

4

(the "2014 Amendment"); Philip R. Feist, *Oklahoma's Family Wealth Preservation Trust Act: Now More Than Ever*, 86 Okla. Bar J. 2342 (2015).[5]

## II. The Wheeler Trusts

On February 24, 2009, Wheeler, as settlor, created the Dustin Wheeler WPT (the "Wheeler WPT"). *See* Appeal R. at 237. Contemporaneously with the creation of the Wheeler WPT, Wheeler and his then-wife conveyed 100% of their interest in Wheeler Land and Cattle, LLC ("Wheeler Land") to Wheeler WPT. *See id.* at 237-38. Wheeler testified that the purpose of the Wheeler WPT was and is to protect assets from creditors for the benefit of his children. *See id.* at 237. In 2011, Wheeler partially revoked the Wheeler WPT to pay divorce-related obligations to his then ex-wife (the "Divorce Revocation"). *See id.* Wheeler also created a revocable trust, the Dustin W. Wheeler Revocable Trust, dated December 22, 2014 (the "Revocable Trust"). *See id.* at 238.

## III. The Dealership Property Transfer

On January 3, 2019, Wheeler, acting as trustee and beneficiary of the Revocable Trust, executed a quitclaim deed to transfer the real property where his Chevrolet dealership is located (the "Dealership Property") to Wheeler Land for no consideration (the "Dealership Property Transfer"). *See id.* at 205-06. The deed was not recorded until seven

---

[5] The 2014 Amendment did not repeal the Replenishment Amendment. Thus, the enacted statute confusingly provides that "[t]he fair market value of any property received by the grantor as a result of a partial revocation shall increase the amount of property which the grantor may contribute to the preservation trust pursuant to Section 12 of this title," even though section 12 no longer contains any limit on how much property the grantor may contribute. Okla. Stat. tit. 31, § 13; *see id.* § 12.

months after it had purportedly been executed and only after the Tenth Circuit had directed that judgment be entered in favor of Cadlerock and against Wheeler. *See id.* at 206. Despite the Dealership Property Transfer, Wheeler continued to report personal ownership of the Dealership Property on his personal financial statements until May 31, 2021. *See id.* at 205 n.6.

IV.   *The Allegedly Fraudulent House Transfers*

On December 29, 2020, Wheeler, acting as trustee and beneficiary of the Revocable Trust, transferred the following property to Wheeler Land (owned by the Wheeler WPT) for no consideration:

> The East 20 feet of Lot TWENTY (20), all of Lot TWENTY-ONE (21) and the West 15 feet of Lot TWENTY-TWO (22), of AMENDED PLAT OF THE SUBDIVISION OF LOT SIX (6) JEWELL HEIGHTS ADDITION, to Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof.

(the "Oklahoma County Property"). *See id.* at 16, 216.

On January 21, 2021, Wheeler transferred his interest in the following property to Wheeler Land for no consideration:

> Unit 52, in Shangri-La Estates, Delaware County, State of Oklahoma, according to the recorded Declaration and recorded plat thereof.

(the "Delaware County Property"). *See id.*

On December 30, 2020, and January 29, 2021, Wheeler signed two memoranda prepared by his attorney concerning the transfers of the Oklahoma County Property and the Delaware County Property (the "House Transfers"). *See* Transfer Mems. (Doc. No. 12-1) at 62, 75; Appeal R. at 153. Each of these memoranda state: "Pursuant to [title 31,

6

section 13 of the Oklahoma Statutes], the fair market value of the property received as a result of [the Divorce Revocation] increased the amount of property which the undersigned could contribute back to the [Wheeler WPT] under [title 31, section 12 of the Oklahoma Statutes]." Transfer Mems. The Transfer Memoranda then declare that the House Transfers were "a contribution back to the [Wheeler WPT] under [title 31, section 12 of the Oklahoma Statutes]." *Id.*

Wheeler testified that when discussing the Transfer Memoranda with his attorney, he did not inform the attorney about the Judgment against Wheeler and that a creditor was trying to collect. *See* Appeal R. at 57-58. He testified that he did not consider these facts material. *See id.* at 58.

Wheeler's attorney testified that she talked to Wheeler "fairly regularly over the years" and that they "discussed estate planning and family matters." Appeal R. at 160. Despite their regular communication regarding estate planning, Wheeler's attorney testified that she did not recall Wheeler discussing his financial condition and that she was not aware of the Judgment against him at the time the Transfer Memoranda were prepared, though she was aware of the Cadlerock litigation. *See id.* at 160-61. Wheeler's attorney testified that she cautioned Wheeler at the time the Wheeler WPT was formed that all transfers were subject to the UFTA. *Id.* at 163-64. When pressed as to whether she believed that the WPT Act excludes replenishment contributions from the UFTA's grasp, Wheeler's attorney demurred, contending that she was "not an expert on the [UFTA]." *Id.* at 164, 167.

7

In its December 2, 2022 Findings of Fact and Conclusions of Law, the Bankruptcy Court found that the House Transfers "were, in fact, fraudulent transfers made with the actual intent to hinder, delay or defraud creditors" and denied Wheeler a discharge of his debts. *See* Appeal R. at 235-36.

## DISCUSSION

Section 727(a)(2)(A) of the Bankruptcy Code provides that a bankruptcy court shall grant a debtor a discharge of his or her debts unless "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). "To deny a discharge under § 727(a)(2), a court must find *actual* intent to defraud creditors." *In re Carey*, 938 F.2d 1073, 1077 (10th Cir. 1991).

Courts may infer fraudulent intent from circumstantial evidence evincing indicia, or "badges," of fraud. *In re Kidd*, No. 11-05291, 2015 WL 6437480, at *6 (B.A.P. 10th Cir. Oct. 23, 2015); *see In re Warren*, 512 F.3d 1241, 1249 (10th Cir. 2008). The Tenth Circuit has recognized that fraudulent intent may be inferred from situations in which a debtor "converts assets immediately before the filing of the bankruptcy petition, gratuitously transfers property, continues to use transferred property, and transfers property to family members." *In re Carey*, 938 F.2d at 1077 (citations omitted). "In determining whether a debtor has acted with intent to defraud under § 727, the court should consider the debtor's whole pattern of conduct." *In re Butler*, 377 B.R. 895, 916 (Bankr. D. Utah 2006) (internal quotation marks omitted). The Court's inquiry is "peculiarly fact specific," and each situation must be evaluated individually. *In re Carey*, 938 F.2d at 1077.

Wheeler argues that the Bankruptcy Court erred in denying a discharge, because: (1) the Dealership Property Transfer cannot support a denial of discharge because it occurred more than one year before the filing of the Petition; (2) the House Transfers were proper transfers and replenishment contributions, made after consultation with counsel and without the intent to defraud creditors; and (3) the value of the House Transfers was *de minimis* relative to the size of Wheeler's total debts. *See* Appellant's Br. at 11-14. The Court considers each argument in turn.

  I.   *Transfer of Dealership Property as Badge of Fraud*

The Bankruptcy Court found the Dealership Property Transfer to be one of several badges of fraud, due to the suspicious timing of the execution and recording of the quitclaim deed and Wheeler's assertion of personal ownership of the Dealership Property on his personal financial statements. *See* Appeal R. at 221-23. Wheeler argues that the Bankruptcy Court should not have considered the Dealership Property Transfer because it occurred more than one year prepetition. *See* Appellant's Br. at 11.

Courts may properly consider transfers made beyond the one-year lookback period as part of an examination of a broader course of conduct that may give rise to an inference of fraudulent intent. *See In re Sicari*, 187 B.R. 861, 878-80 (Bankr. S.D.N.Y. 1994); *see also In re Norton*, 185 B.R. 945, 951 (Bankr. N.D. Ga. 1995) ("Evidence of the retention of benefits [following a transfer] can thereby serve to establish the existence of [a] fraudulent intent or scheme."). Here, the Bankruptcy Court did just that, properly considering the Dealership Property Transfer as one factor in evaluating Wheeler's overall conduct and intent even though it found that such transfer occurred beyond the one-year

9

lookback period of 11 U.S.C. § 727(a)(2)(A). This Court sees no flaw in the Bankruptcy Court's analysis.

## II.   *Replenishment Contributions Under Advice of Counsel*

Wheeler asserts that the House Transfers were valid. *See* Appellant's Br. at 11-13. Wheeler argues that he did not intend to defraud creditors because he believed, after consultation with counsel, that he had "the absolute right" to make the House Transfers "as valid replenishments for assets previously removed from the [Wheeler] WPT." *Id.* at 13.

First, the Court rejects Wheeler's argument that the House Transfers were valid replenishment contributions under the WPT Act. Following the 2014 Amendment's removal of the Contribution Limit, there was no apparent need for any such replenishment contribution. And, even if there was, section 17 of the WPT Act provides that "[a]ny transfer of monies or property by a grantor to a [WPT] shall be subject to the provisions of the Uniform Fraudulent Transfer Act." Okla. Stat. tit. 31, § 17. Accordingly, the Court agrees with the Bankruptcy Court's conclusion that Wheeler's reliance on title 31, section 13 of the Oklahoma Statutes to justify the House Transfers is misplaced. *See* Appeal R. at 261.

Second, the Court concurs with the Bankruptcy Court's conclusion that Wheeler cannot rely on his advice of counsel defense. Though a debtor who relies on advice of counsel generally lacks the intent required to deny him a discharge of his debts, the debtor's reliance must be in good faith. *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir. 1986). Importantly, the debtor must have "communicated *all* relevant facts to counsel" when seeking advice. *In re Rael*, 753 F. App'x 649, 656 (10th Cir. 2018) (emphasis added).

10

Here, Wheeler testified that he did not inform his attorney of the Judgment against Wheeler when seeking advice about the House Transfers, and Wheeler's attorney testified that she was not aware of the Judgment when she prepared the Transfer Memoranda. *See* Appeal R. at 57-58, 160-61. Although Wheeler testified that he did not consider the Judgment to be material, the Bankruptcy Court reasonably found the credibility of such testimony lacking in light of the size of the Judgment relative to Wheeler's claimed net worth and Wheeler's background as a businessperson.

This Court finds no clear error in the Bankruptcy Court's factual findings and, further, agrees upon de novo review with the Bankruptcy Court's conclusion that Wheeler's failure to disclose the Judgment was intentionally fraudulent and not the product of a good faith reliance upon the advice of counsel.

### III. *De Minimis* Size of Fraudulent Transfer

Finally, Wheeler argues that the Bankruptcy Court should not have denied a discharge because the value of the House Transfers was *de minimis* in relation to the size of Wheeler's total debts. *See* Appellant's Reply at 4 ("If the Trial Court Judgment stands, Appellant will be saddled with over $20,000,000.00 in debt based solely on his decision, made after consulting with his attorney, to transfer properties having a value of less than $100,000 (or 0.005% of the value of the non-dischargeable debts).").

"There is no *de minimis* exception for fraudulent conduct by a debtor in bankruptcy." *In re Sofer*, 519 B.R. 28, 38 (Bankr. E.D.N.Y. 2014); *see In re Davis*, 911 F.2d 560, 561 (11th Cir. 1990) (affirming denial of discharge based on fraudulent transfer of real property with mortgages and tax liens that exceeded its fair market value); *see also*

11

*In re Hintze*, 570 B.R. 369, 388 (Bankr. N.D. Fla. 2017) ("[T]here is no *de minimis* exception in Section 727(a)(2)(A)."). Nevertheless, the Court may consider the *de minimis* value of an allegedly fraudulent transfer when probing the debtor's intent. *See In re Dolata*, 306 B.R. 97, 147-48 (Bankr. W.D. Pa. 2004) (finding that the debtor lacked fraudulent intent when making a transfer of property "largely because of the relative *de minimis* nature" of the conveyance); *cf. In re Antoniou*, 515 B.R. 9, 20 (Bankr. E.D.N.Y. 2014) (explaining that a debtor's failure to disclose an asset "could be attributed to carelessness, rather than fraudulent intent," and that a denial of discharge under § 727(a)(4)(A) might therefore be unwarranted).

The Court acknowledges that the value of the House Transfers was small relative to the size of Wheeler's debts but agrees with the Bankruptcy Court that such value was significant relative to Wheeler's $102,392.94 in reported assets. *See* Appeal R. at 253-54. The Bankruptcy Court did not ignore the relative value of the House Transfers, however. Rather, in the course of its well-reasoned Findings of Fact and Conclusions of Law, the Bankruptcy Court noted the facts pertinent to Wheeler's argument but nevertheless found that Wheeler acted with fraudulent intent because, in sum: (1) Wheeler, with knowledge of the Judgment and within one year of the Petition, made the House Transfers to Wheeler Land, which was owned by the Wheeler WPT, a trust expressly created to protect Wheeler's assets from creditors; and (2) when seeking advice from counsel, Wheeler failed to disclose the Judgment.

This Court finds no clear error in the Bankruptcy Court's factual findings and, further, agrees upon de novo review with the Bankruptcy Court's conclusion that Wheeler

12

made the House Transfers within one year before the date of the filing of the Petition and did so with actual intent to hinder, delay, or defraud his creditors. *See* 11 U.S.C. § 727(a)(2)(A).

## CONCLUSION

For the reasons set forth herein, the Bankruptcy Court's order as set forth in its December 2, 2022 Findings of Fact and Conclusions of Law is AFFIRMED.

IT IS SO ORDERED this 26th day of September, 2024.

_____
CHARLES B. GOODWIN
United States District Judge